UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRIETTA FTIKAS, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>       vs.<br><br>COLUMBIA PIPELINE GROUP, INC., ROBERT C. SKAGGS, JR., STEPHEN P. SMITH, and GLEN L. KETTERING,<br><br>                              Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

Plaintiff Henrietta Ftikas ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of press releases and other public statements issued by Columbia Pipeline Group, Inc. ("Columbia Pipeline" or the "Company"), Columbia Pipeline's filings with the U.S. Securities and Exchange Commission (SEC), media and analyst reports about the Company, and other public information regarding the Company.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This class action is brought on behalf of all Columbia Pipeline shareholders, except Defendants (defined below) and their affiliates, of record as of May 18, 2016, the record date for Columbia Pipeline shareholders to be eligible to vote on the merger between Columbia

Pipeline and TransCanada Corporation ("TransCanada").  The claims asserted herein are alleged against Columbia Pipeline, Robert C. Skaggs, Jr. ("CEO Skaggs"), Columbia Pipeline's former Chairman and Chief Executive Officer ("CEO"), Stephen P. Smith ("CFO Smith"), Columbia Pipeline's former Chief Financial Officer , and Glen L. Kettering ("President Kettering"), Columbia Pipeline's former President, for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9.

2.      This action arises from the merger in which Columbia Pipeline was acquired by TransCanada, which closed on July 1, 2016 (the "Merger").  Only one year earlier, on July 1, 2015, NiSource, Inc. ("NiSource") separated Columbia Pipeline, a then-wholly-owned subsidiary, into a stand-alone publicly traded company (the "Spinoff").  Less than one year after the Spinoff, on March 17, 2016, Columbia Pipeline announced it had entered into an agreement and plan of merger to be acquired by TransCanada, pursuant to which Columbia Pipeline shareholders would receive $25.50 per share in cash (the "Merger Agreement").  The transaction was valued at $13 billion, including the assumption of Columbia Pipeline debt.

3.      The Merger Agreement was approved and recommended to Columbia Pipeline shareholders by the Company's Board of Directors (the "Board").  The Board comprised CEO Skaggs, Sigmund L. Cornelius, Marty R. Kittrell, W. Lee Nutter, Deborah S. Parker, Lester P. Silverman, and Teresa A. Taylor.  In connection with the Merger, the Board was advised by two financial advisors: Goldman, Sachs & Co. ("Goldman") and Lazard Frères & Co. LLC ("Lazard Frères").  The Merger required the approval of a majority of Columbia Pipeline shareholders. On April 8, 2016, the Company filed its preliminary proxy statement with the SEC.  On May 17, 2016, the Company filed its definitive proxy statement with the SEC (the "Proxy").  On June 22,

2016, the Company's shareholders voted in favor of the Merger.  Of the Company's total outstanding shares entitled to vote, more than 95 percent were cast in favor of the Merger.

4.      Unbeknownst to Columbia Pipeline shareholders, Columbia Pipeline and its executive officers, including CEO Skaggs, CFO Smith, and President Kettering, conspired with TransCanada and engineered the Spinoff from NiSource, and the ultimate sale of the Company to TransCanada, as part of a self-interested plan to cash in on lucrative change-in-control benefits.  CEO Skaggs, CFO Smith, and President Kettering all built their decades-long careers at NiSource, but they were eager to retire with "golden parachutes."  Prior to the Spinoff, and despite prior expressions of interest from prospective buyers (including TransCanada), CEO Skaggs, CFO Smith, and President Kettering prevented a sale of the Company because such sale would not have triggered their change-in-control benefits.  Following the Spinoff, and as part of that transaction, CEO Skaggs, CFO Smith, and President Kettering secured new positions at the newly created stand-alone publicly traded Company, as well as dollar-for-dollar transfers of their change-in-control benefits.

5.      Columbia Pipeline and its executive officers, including CEO Skaggs, CFO Smith, and President Kettering, decided to sell out Columbia Pipeline shareholders in exchange for TransCanada's offer to purchase Columbia Pipeline soon after the Company went public, with the Merger triggering the executive officers' change-in-control benefits.  In return, the executive officers did not negotiate to maximize the value of Columbia Pipeline shares in the Merger, but instead worked to persuade Columbia Pipeline's Board and Columbia Pipeline shareholders to exclude other prospective buyers from bidding on the Company, to preference TransCanada over other prospective buyers, and to ultimately accept TransCanada's meager $25.50 per share offer.

6.      As a result of CEO Skaggs's, CFO Smith's, and President Kettering's disloyalty and self-dealing, many of the representations made to Columbia Pipeline shareholders in the Proxy were false and misleading.  Specifically, the Proxy failed to disclose that Columbia Pipeline and its executive officers: (1) conspired to engineer the Spinoff from NiSource, and ultimate sale of the Company to TransCanada, as part of a self-interested plan to cash in on lucrative change-in-control benefits; (2) concealed TransCanada's prior expressions of interest to purchase the Pre-Spinoff Entities directly from NiSource; (3) excluded prospective buyers, other than TransCanada, from bidding on the Company, thereby preferencing TransCanada to the detriment of Columbia Pipeline shareholders; (4) negotiated standstill agreements, and waivers therefrom, with various prospective buyers to rush to consummate the Merger with TransCanada, thereby triggering the change-in-control benefits; and (5) did not negotiate to maximize the value of Columbia Pipeline shares in the Merger.

7.      As a result of these material misrepresentations and omissions, Columbia Pipeline shareholders were misled into accepting consideration from the Merger that was well below fair value for their Columbia Pipeline shares.

8.      Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the Exchange Act by filing false and misleading proxy materials.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act, 15.U.S.C. §§ 78n(a), 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

4

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and/or dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  Until the closing of the Merger, Columbia Pipeline transacted business in this District, and the Company's common stock traded in this District on the New York Stock Exchange (NYSE).

12.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.     Plaintiff Henrietta Ftikas owned, as set forth in the attached certification, shares of Columbia Pipeline stock eligible to vote on the Merger and suffered damages as a result of the violations of the federal securities laws alleged herein.

14.     Defendant Columbia Pipeline was a Delaware corporation, created following the Spinoff from NiSource, with its principal executive offices located at 5151 San Felipe Street, Suite 2500, Houston, Texas 77056.  Until consummation of the Merger and delisting of the Company's common stock from the NYSE, the Company's common stock was listed and actively traded on the NYSE under the ticker symbol "CPGX."

15.     Defendant CEO Skaggs built his career at and spent about 30 years with NiSource.  CEO Skaggs first joined NiSource in 1981, as an attorney for subsidiary Columbia Gas Transmission Corporation, and he worked his way up the corporate ladder.  Until the Spinoff, CEO Skaggs was President and Chief Executive Officer of NiSource from October 26, 2004 to June 2, 2015 and from July 1, 2005 to June 2, 2015, respectively.  Following the Spinoff, CEO Skaggs left NiSource to become Chairman and CEO of Columbia Pipeline.

16.     Defendant CFO Smith also built his career at and spent about 20 years with NiSource.  CFO Smith first joined NiSource in 1996, as CFO for subsidiary Columbia Gas Transmission Corporation.  Until the Spinoff, CFO Smith was Executive Vice President and CFO of NiSource from June 2008 to June 2015.  Following the Spinoff, CFO Smith left NiSource to become CFO of Columbia Pipeline.

17.     Defendant President Kettering also built his career at and spent about 30 years with NiSource.  President Kettering worked his way up the NiSource corporate ladder, first joining NiSource's subsidiary Columbia Gas Transmission Corporation in 1979 as an attorney. President Kettering was Executive Vice President of NiSource until December 31, 2015. Following the Spinoff, President Kettering left NiSource to become President of Columbia Pipeline.

18.     Defendants CEO Skaggs, CFO Smith, and President Kettering are collectively referred to hereinafter as the "Individual Defendants."  Columbia Pipeline and the Individual Defendants are collectively referred to hereinafter as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Spinoff and the Merger

19.     NiSource, based in Merrillville, Indiana, is one of the largest natural gas utility companies in the United States, serving nearly 4 million customers in seven states under the Columbia Gas and NIPSCO brands.

20.     CEO Skaggs, CFO Smith, and President Kettering all built their careers at NiSource and spent 30 years, 20 years, and 30 years at NiSource and its various subsidiaries, respectively.  Prior to the Spinoff, the Individual Defendants were executive officers of NiSource, but not of the entities that would become Columbia Pipeline (namely, Columbia Gas Transmission, Columbia Gulf Transmission, Columbia Midstream Group, Columbia Pipeline Partners, and other natural gas pipeline, storage, and midstream holdings of NiSource (the "Pre-Spinoff Entities")).

21.     Prior to the Spinoff, several prospective buyers (including TransCanada) expressed their interest in acquiring the Pre-Spinoff Entities directly from NiSource.  Because the Individual Defendants were NiSource executive officers at that time, and because the Pre-Spinoff Entities comprised a relatively small percentage of NiSource's total assets, a direct sale of the Pre-Spinoff Entities would not have triggered change-in-control benefits for the Individual Defendants.  Each of the Individual Defendants was eager to retire, but each would have forfeited his change-in-control benefits had he retired from NiSource.  Thus, the Individual Defendants prevented a direct sale of the Pre-Spinoff Entities and engineered the Spinoff, and the ultimate sale of the Company to TransCanada, as part of a plan to cash in on these lucrative change-in-control benefits.

**CEO Skaggs, CFO Smith, and President Kettering Conspire With TransCanada**

22.     Prior to the Spinoff, Lazard Frères, Columbia Pipeline's banker, approached TransCanada to discuss the Individual Defendants' plans for the Spinoff and the Merger.  Lazard Frères communicated the fact that CEO Skaggs, CFO Smith, and President Kettering all wanted to retire, that they were going to complete the Spinoff, and that Columbia Pipeline would be "in play right away."

23.     On July 1, 2015, NiSource completed the Spinoff, separating the Pre-Spinoff Entities into the stand-alone publicly traded Company, Columbia Pipeline.  The Individual Defendants, all former NiSource executive officers, became executive officers at Columbia Pipeline.  Critically, the Individual Defendants secured dollar-for-dollar transfers of their change-in-control benefits to Columbia Pipeline, even though the Company was much smaller than NiSource.  A sale of the post-Spinoff Company would trigger payment of the Individual Defendants' change-in-control benefits, benefits they would not have otherwise received had they retired directly from NiSource.

24.     Columbia Pipeline began receiving offers from prospective buyers almost immediately after the Spinoff was completed.  Throughout Fall 2015, Columbia Pipeline fielded a number of offers, none of which satisfied the Board.  In November 2015, Columbia Pipeline's Board stopped the bidding process, and under the terms of various "standstill" agreements, prospective buyers were required to destroy all due diligence materials and were prohibited from taking steps towards making any new offers, absent a written invitation from the Board.

25.     In January 2016, TransCanada Executive Vice President Francois Poirier met with CFO Smith to discuss TransCanada's interest in acquiring Columbia Pipeline.  During that meeting, CFO Smith stated, "We've eliminated all the competition."  About one week after that meeting, CFO Smith asked Goldman and Lazard Frères to return due diligence materials to

TransCanada.  One member of Columbia Pipeline's Board has noted that the Board "didn't authorize any of this" and that "this wasn't a level playing field."  Columbia Pipeline's Board nevertheless approved an exclusivity agreement with TransCanada.

26.     In early March 2016, the exclusivity period with TransCanada expired, but only one prospective buyer (not subject to the standstill agreements) approached Columbia Pipeline to bid.  Rather than negotiate a higher and more competitive bid with this new prospective buyer, CFO Smith contacted TransCanada to confirm the Company had drafted a message rejecting the prospective buyer.  CFO Smith asked TransCanada to approve the rejection, and to sign another exclusivity agreement.  The Proxy states that TransCanada, not Columbia Pipeline, asked for a new exclusivity agreement at that time.

27.     Less than one year after the Spinoff, Columbia Pipeline announced it had entered into a definitive agreement, dated March 17, 2016, to be acquired by TransCanada for $25.50 per share in cash.  Including the assumption of Columbia Pipeline debt, the total enterprise value of the transaction was valued at $13 billion.

### Defendants' Materially False and Misleading Statements

28.     On April 8, 2016, the Company filed its preliminary proxy statement with the SEC.  On May 17, 2016, the Company filed the definitive Proxy Statement, including the Merger Agreement, with the SEC on Form DEFM14A and as a prospectus supplement to the Registration Statement on Form S-4, and mailed it to Columbia Pipeline shareholders on or about May 18, 2016.

29.     The Proxy provided a description of the proposed Merger, including detailed accounts of the Merger Consideration, the Background of the Merger, and the Reasons for the Merger, as well as a Recommendation of the Board.  The Proxy stated that CEO Skaggs first learned of "a large U.S. midstream energy company['s]" interest in the Company on July 6,

2015, in a voicemail message left for CEO Skaggs, wherein the CEO of that midstream energy company indicated "he would like to discuss with Mr. Skaggs . . . future opportunities for their two companies."  The Proxy described how the Company was courted by several prospective buyers over the course of late Summer and Fall 2015, whether certain parties were subject to standstill agreements during this period, the process by which the Company negotiated exclusivity agreements with TransCanada, and the "material factors considered by the Board in determining to approve" the Merger Agreement and "recommend its adoption" by Columbia Pipeline shareholders.

30.    The statements set forth in ¶ 29 were materially false and misleading because they failed to disclose that the Individual Defendants conspired with TransCanada to postpone the purchase of the Pre-Spinoff Entities and to conceal TransCanada's prior expressions of interest in acquiring the Pre-Spinoff Entities directly from NiSource.  The Individual Defendants then engineered the Spinoff from NiSource, and the ultimate sale of the Company to TransCanada, as part of a self-interested plan to cash in on lucrative change-in-control benefits.  The Individual Defendants did not negotiate to maximize the value of Columbia Pipeline shares in the Merger, but instead worked to persuade Columbia Pipeline's Board and Columbia Pipeline shareholders to exclude other prospective buyers from bidding on the Company, to preference TransCanada over other prospective buyers, and to ultimately accept TransCanada's meager $25.50 per share offer.  Specifically, the Proxy failed to disclose that Columbia Pipeline and its executive officers: (1) conspired to engineer the Spinoff from NiSource, and ultimate sale of the Company to TransCanada, as part of a self-interested plan to cash in on lucrative change-in-control benefits; (2) concealed TransCanada's prior expressions of interest to purchase the Pre-Spinoff Entities directly from NiSource; (3) excluded prospective buyers, other than TransCanada, from bidding

on the Company, thereby preferencing TransCanada to the detriment of Columbia Pipeline

shareholders; (4) negotiated standstill agreements, and waivers therefrom, with various

prospective buyers to rush to consummate the Merger with TransCanada, thereby triggering the

change-in-control benefits; and (5) did not negotiate to maximize the value of Columbia Pipeline

shares in the Merger.

## LOSS CAUSATION

31.     The false and misleading Proxy was an essential link in the chain of events

leading to the Merger, and in proximately causing damages to Class members.  Defendants'

misrepresentations regarding the Individual Defendants' self-dealing and the Company's bias

towards TransCanada in the Merger negotiations caused Plaintiff and members of the Class to

accept Merger consideration that failed to adequately value Columbia Pipeline's shares.  As a

result of their holdings of Columbia Pipeline shares at the record date, Plaintiff and other

members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action on her own behalf and as a class action on behalf of all

holders of Columbia Pipeline common stock who were harmed by Defendants' actions described

herein (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust,

corporation, or other entity related to or affiliated with any defendant.

33.     This action is properly maintainable as a class action under Rule 23 of the Federal

Rules of Civil Procedure.

34.     The Class is so numerous that joinder of all members is impracticable.  As of the

close of business on the Columbia Pipeline record date—May 18, 2016— hundreds of thousands

of shares of Columbia Pipeline common stock were outstanding and entitled to vote on the

Merger.  Those shares were held by hundreds, if not thousands, of individuals and entities located throughout the country.

35.     Questions of law and fact are common to the Class, including, among others, (i) whether Defendants violated the Exchange Act; and (ii) whether Defendants' conduct irreparably harmed Plaintiff and other members of the Class.

36.     There is a well-defined community of interests in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants disregarded that their statements and/or omissions were false and misleading;

(e)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

37.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

38.    Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

39.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**INAPPLICABILITY OF STATUTORY SAFE HARBOR**

40.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Further, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Columbia Pipeline who knew that the statement was false when made.

**COUNT  I**

**On Behalf of Plaintiff and the Class Against All Defendants for**
**Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

41.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Defendants (the "14(a) Defendants") disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.

43.     The Proxy was prepared, reviewed, and/or disseminated by the 14(a) Defendants. By virtue of their positions within Columbia Pipeline, the 14(a) Defendants were aware of this information and their duty to disclose this information in the Proxy.

44.     The 14(a) Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

45.     The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder will consider them important in deciding how to vote on the Merger.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

46.     The Proxy was an essential link in causing Columbia Pipeline shareholders to approve the Merger.

47.     By reason of the foregoing, the 14(a) Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class were harmed.

## COUNT  II

### On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants (the "20(a) Defendants") acted as controlling persons of Columbia Pipeline within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions and participation in and/or awareness of  Columbia Pipeline's operations and/or intimate knowledge of the false and misleading statements contained in the Proxy filed with the SEC, the 20(a) Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of Columbia Pipeline, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

51.     The 20(a) Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the 20(a) Defendants had direct and supervisory involvement in the day-to-day operations of Columbia Pipeline, and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The misrepresented information identified above was reviewed by the Board prior to voting on the Merger.  The Proxy at issue contains the unanimous recommendation of the Board to approve the Merger. The 20(a) Defendants were thus directly involved in the making of the Proxy.

53.     In addition, as the Proxy sets forth at length, and as described herein, the 20(a) Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the 20(a) Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the 20(a) Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the 20(a) Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the 20(a) Defendants' conduct, Plaintiff and the Class were irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

16

E.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.


Dated: April 25, 2018                           **LEVI & KORSINSKY, LLP**

                                                /s/ Eduard Korsinsky_____
                                                Eduard Korsinsky
                                                30 Broad St., 24th Floor
                                                New York, New York 10004
                                                Tel: (212) 363-7500
                                                Fax: (212) 363-7171
                                                ek@zlk.com

                                                *Attorney for Plaintiff Henrietta Ftikas*