# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRIETTA FTIKAS, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>COLUMBIA PIPELINE GROUP, INC., ROBERT C. SKAGGS, JR., STEPHEN P. SMITH, and GLEN L. KETTERING,<br><br>　　　　　　　Defendants. | CIVIL ACTION NO.<br>1:18-cv-03670-GBD |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE ARBITRAGE FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND <u>APPROVAL OF ITS SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.     THE ARBITRAGE FUND IS THE PRESUMPTIVE LEAD PLAINTIFF ........... 2

          A.     The Arbitrage Fund Has The Largest Financial Interest and Satisfies the Rule 23 Requirements ............................................................. 2

          B.     The Presumption In Favor Of The Arbitrage Fund Has Not Been Rebutted ................................................................................................... 3

               1.     The Arbitrage Fund's Trading Strategy Does Not Subject It To Unique Defenses ....................................................................... 4

               2.     The Arbitrage Fund's Purchases Above The Merger Price Do Not Subject It To Unique Defenses ......................................... 7

               3.     The Arbitrage Fund's Purchases After The Merger Announcement Do Not Subject It To Unique Defenses ................. 8

    II.    THE ARBITRAGE FUND'S CHOICE OF LEAD COUNSEL SHOULD BE APPROVED ................................................................................................ 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Aviva Partners, LLC v. Navarre Corp.*,
 No. CIV. 05-1151, 2005 WL 3782255 (D. Minn. Dec. 13, 2005) .................................... 7

*Browning Debenture Holders' Comm. v. DASA Corp.*,
 524 F.2d 811 (2d Cir. 1975) ............................................................................................ 6

*Burch v. SLM Corp.*,
 No. 08 CIV. 1029 (WHP), 2008 WL 2945348 (S.D.N.Y. July 23, 2008) ........................ 4

*Cowin v. Bresler*,
 741 F.2d 410 (D.C. Cir. 1984) ........................................................................................ 6

*DCML LLC v. Danka Bus. Sys. PLC, A.D.*,
 No. 08 Civ. 5829, 2008 WL 5069528 (S.D.N.Y.2008) .................................................. 9

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
 381 F. Supp. 2d 192 (S.D.N.Y.2004) .............................................................................. 9

*In re Appraisal of Dell Inc.*,
 143 A.3d 20 (Del. Ch. 2016) ........................................................................................... 5

*In re Appraisal of SWS Group, Inc.*,
 No. 2017-10554-VCG (Del. Ch. May 30, 2017) ............................................................. 5

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
 258 F.R.D. 260 (S.D.N.Y. 2009) .................................................................................... 2

*In re Critical Path, Inc. Sec. Litig.*,
 156 F. Supp. 2d 1102 (N.D. Cal. 2001) .......................................................................... 6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
 288 F.R.D. 26 (S.D.N.Y. 2012) ...................................................................................... 3

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir. 2009) .............................................................................................. 8

*In re Host Am. Corp. Sec. Litig.*,
 236 F.R.D. 102 (D. Conn. 2006) ..................................................................................... 6

*In re Imax Sec. Litig.*,
 No. 06 CIV. 6128 (NRB), 2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011) ....................... 4

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 199 F.R.D. 119 (S.D.N.Y. 2001) .................................................................................... 7

*In re SLM Corp. Sec. Litig.*,
    258 F.R.D. 112 (S.D.N.Y. 2009) ................................................................................ 4, 8

*In re Veeco Instruments, Inc.*,
    233 F.R.D. 330 (S.D.N.Y. 2005) ..................................................................................... 8

*Marcus v. J.C. Penney Co.*,
    No. 6:13-CV-736, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ................................. 6

*Mills v. Elec. Auto-Lite*,
    396 U.S. 375 (1970) ........................................................................................................ 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ..................................................................................... 7

*Porzio v. Overseas Shipholding Group,*
    No. 12 Civ 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ......................................... 8

*Rocker Management L.L.C. v. Lernout & Hauspie Speech Products N.V.*,
    No. 00-5965 (JCL), 2005 WL 1366025 (D.N.J. June 8, 2005) ....................................... 5

*Sofran v. LaBranche & Co.*, Inc.,
    220 F.R.D. 398 (S.D.N.Y. 2004) ..................................................................................... 3

*TSC Industries v. Northway*,
    426 U.S. 438 (1976) ........................................................................................................ 5

*Weikel v. Tower Semiconductor Ltd,*
    183 F.R.D. 377 (D.N.J. 1998) ......................................................................................... 6

*Weisz v. Calpine Corp.,*
    No. 4:02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) .............................. 6

*Werfel v. Kramarsky,*
    61 F.R.D. 674 (S.D.N.Y. 1974) ...................................................................................... 9

*Woburn Ret. Sys. v. Salix Pharm., Ltd.,*
    No. 14-CV-8925 KMW, 2015 WL 1311073 (S.D.N.Y. Mar. 23, 2015) ..................... 4, 6

**Statutes**

15 U.S.C. § 78n(a) ............................................................................................................ passim

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................ 1, 10

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................................ 1, 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................ 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ............................................................................................... 1, 3, 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................................... 10

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................................ 1, 3

Plaintiff The Arbitrage Fund respectfully submits this reply memorandum of law in further support of its motion for: (1) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act,[1] as amended by the PSLRA; (2) approval of its selection of Entwistle & Cappucci LLP as Lead Counsel for the class; and (3) any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

It is beyond dispute that The Arbitrage Fund held more Columbia Pipeline common stock on the Merger record date than competing Lead Plaintiff movant Henrietta Ftikas ("Movant Ftikas"). For a claim under Section 14(a) of the Exchange Act such as this one, this objective measure gives The Arbitrage Fund the "largest financial interest" in the litigation. The Arbitrage Fund has also demonstrated that it meets the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. The Arbitrage Fund is therefore entitled to a strong presumption that it is the "most adequate plaintiff" to lead this case. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). That presumption can only be rebutted with "***proof***" that The Arbitrage Fund is inadequate or subject to unique defenses. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). Indeed, Movant Ftikas acknowledges that her Lead Plaintiff motion can only be granted if there is proof that The Arbitrage Fund is subject to unique defenses based on adequacy and typicality grounds. No such proof exists.

Movant Ftikas argues that The Arbitrage Fund is subject to a unique defense due to its purported trading strategy. Despite Movant Ftikas's rank speculation about The Arbitrage Fund, the Fund did not engage in appraisal arbitrage, short selling, or day trading strategies in Columbia

---

[1] Unless otherwise noted, all capitalized terms herein shall have the same meaning set forth in the Memorandum of Law in Support of the Motion of The Arbitrage Fund for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel (the "Arbitrage Fund Lead Plaintiff Motion") (ECF No. 9).

Pipeline common stock. The Arbitrage Fund pursues capital growth by engaging in merger arbitrage – *i.e.*, investing in securities that are involved in mergers and acquisitions to benefit from the delta between market price and merger consideration. Courts have routinely held in securities class actions that plaintiffs who engage in such merger arbitrage are not subject to unique defenses that would disqualify them from serving as lead plaintiffs. Moreover, even if The Arbitrage Fund had engaged in the trading strategies that Movant Ftikas alleges, it would still satisfy the adequacy and typicality requirements of the PSLRA because reliance is not an element of a Section 14(a) claim.

Accordingly, because The Arbitrage Fund has the largest financial interest in this litigation and the strong presumption in its favor has not been rebutted, its Lead Plaintiff motion should be granted.

## ARGUMENT

### I. THE ARBITRAGE FUND IS THE PRESUMPTIVE LEAD PLAINTIFF

#### A. The Arbitrage Fund Has The Largest Financial Interest and Satisfies the Rule 23 Requirements

There is no dispute that The Arbitrage Fund held more Columbia Pipeline shares on the Merger record date than Movant Ftikas. As of the Merger record date, The Arbitrage Fund held 1,166,559[2] shares of Columbia Pipeline common stock eligible to vote on the Merger compared to Movant Ftikas's 1,292 shares. Thus, The Arbitrage Fund undeniably has the largest financial interest of the two Lead Plaintiff movants under the recognized standard used for claims brought under Section 14(a). *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 269 (S.D.N.Y. 2009) (finding number of record date shares can be used to "gaug[e] the

---

[2] The Arbitrage Fund bought an additional 277,557 shares after the Merger record date and, thus, had a total of 1,444,116 shares when the Merger closed on July 1, 2016. *See* ECF No. 10-1.

2

movants' financial interest in the Section 14(a) claims"). The Arbitrage Fund has also plainly demonstrated that it satisfies the adequacy and typicality requirements of Fed. R. Civ. P. 23. *See* ECF No. 9 (Arbitrage Fund Lead Plaintiff Motion); *see also* The Arbitrage Fund's Memorandum of Law in Further Support of it Motion for Lead Plaintiff Appointment and in Opposition to Competing Movant Henrietta Ftikas, filed contemporaneously herewith. Thus, The Arbitrage Fund's Lead Plaintiff motion should be granted under the statutory presumption dictated by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B.   The Presumption In Favor Of The Arbitrage Fund Has Not Been Rebutted

The strong presumption in favor of The Arbitrage Fund "may be rebutted ***only upon proof*** . . . that the presumptively most adequate plaintiff – will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Notably, this presumption may be overcome only by actual proof of inadequacy and not mere speculation. *See*, *e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.,* 288 F.R.D. 26, 40 (S.D.N.Y. 2012) ("[E]xacting proof [is] needed to rebut the PSLRA's presumption"); *Sofran v. LaBranche & Co*., Inc., 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that the PSLRA requires proof of inadequacy and not merely speculations). Movant Ftikas does not come close to providing any proof to overcome the strong presumption that The Arbitrage Fund is the appropriate Lead Plaintiff in this Action.

Without any support, Movant Ftikas argues that The Arbitrage Fund is subject to unique defenses because it (i) engaged in trading strategies that render it atypical and inadequate, (iii) was not misled by the material misstatements and omissions in the Merger proxy statement, and (iii) bought its shares after the Merger was announced. All of these arguments lack merit and do

3

nothing to rebut the presumption in favor of The Arbitrage Fund.

### 1. The Arbitrage Fund's Trading Strategy Does Not Subject It To Unique Defenses

Movant Ftikas incorrectly speculates that The Arbitrage Fund is subject to unique defenses given its purported trading strategy for Columbia Pipeline. Ftikas Opposition ("Ftikas Opp.") (ECF No. 14) at 5-6. But Movant Ftikas offers no support for this contention, and in fact, misstates the actual trading strategy used by The Arbitrage Fund, which is not disqualifying in any way.

The Arbitrage Fund seeks to achieve capital growth by engaging in merger arbitrage. Under this strategy, the Fund invests in securities that are involved in mergers and acquisitions to benefit from the delta between market price and merger consideration. Thus, The Arbitrage Fund decides whether to invest in a stock undergoing a merger by carefully analyzing the merger proxy statement. Typically, merger arbitrage is a low volatility strategy pursued by absolute return minded investors. Courts have routinely held that plaintiffs who engage in merger arbitrage are not subject to unique defenses in securities litigations. *See*, *e.g.*, *In re Imax Sec. Litig.,* No. 06 CIV. 6128 (NRB), 2011 WL 1487090, at *7 (S.D.N.Y. Apr. 15, 2011) (finding that lead plaintiff movant with the largest financial interest is not subject to unique defenses due to its utilization of a merger arbitrage strategy and noting that similar arguments "have been rejected by a number of courts"); *Burch v. SLM Corp.*, No. 08 CIV. 1029 (WHP), 2008 WL 2945348, at *5 (S.D.N.Y. July 23, 2008) (rejecting argument that merger arbitrage strategy rendered a lead plaintiff atypical), *vacated, on other grounds sub nom. In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112 (S.D.N.Y. 2009);[3] *Woburn Ret. Sys. v. Salix Pharm., Ltd.,* No. 14-CV-8925 (KMW), 2015 WL 1311073, at *7 (S.D.N.Y. Mar. 23, 2015) ("[I]nvestment strategies intended to mitigate risk do not

---

[3] The appeals court in *SLM* ultimately held that the lead plaintiff lacked standing because it was an investment advisor, not due its investment strategy.

4

render a movant atypical or inadequate"). Thus, The Arbitrage Fund's merger arbitrage strategy does not subject it to any unique defenses as Movant Ftikas contends.

Moreover, contrary to Movant Ftikas's speculations, The Arbitrage Fund did not buy its Columbia Pipeline shares with the intention of engaging in appraisal arbitrage. *See* Declaration of Andrew J. Entwistle in Further Support of The Arbitrage Fund's Motion for Lead Plaintiff Appointment ("Entwistle Decl."), Ex. A.  As of June 24, 2016, when The Arbitrage Fund purchased its last shares in Columbia Pipeline, it had never engaged in an appraisal arbitrage strategy or filed an appraisal action in connection with any merger.[4]  Indeed, the Fund did not vote in dissent of the Columbia Pipeline-TransCanada Merger. *See id.*  When the Merger closed, the Fund tendered its shares and did not assert appraisal rights, which other stockholders have done. *See id.*  The Arbitrage Fund simply did not engage in appraisal arbitrage in connection with its Columbia Pipeline investments.[5]

The Arbitrage Fund also did not engage in day trading or short selling its Columbia Pipeline shares, as Movant Ftikas suggests without support. *See id.*  It began buying Columbia Pipeline common stock on March 18, 2016 and, other than one sale, held those shares until the Merger closed on July 1, 2016.  Accordingly, the Arbitrage Fund was not day trading or short selling its

---

[4] All four appraisal cases cited by Movant Ftikas have been recently filed by the Arbitrage Fund, after it began to engage in an appraisal arbitrage strategy with a minor portion of its assets. *See* Verified Petition for Appraisal, *The Arbitrage Fund, et al. v. Barracuda Networks, Inc.*, No. 2018-0293-JTL (Del. Ch. Apr. 9, 2018); Verified Petition for Appraisal, *In re Appraisal of Bob Evans Farms, Inc.*, No. 2018-02052-JRS (Del. Ch. Jan. 23, 2018); Verified Petition for Appraisal, *Arbitrage Fund v. Gigamon, Inc.*, No. 2018-0037-AGB (Del. Ch. Jan. 18, 2018); Verified Petition for Appraisal, *Arbitrage Fund v. Intralinks Holdings, Inc.*, No. 2017-0370-JTL (Del. Ch. May 15, 2017).  Indeed, all of these actions were initiated well after the July 1, 2016 closing of the Columbia Pipeline-TransCanada Merger.

[5] Regardless, none of the authorities cited by Movant Ftikas hold that appraisal arbitrageurs are subject to unique defenses. Neither *Rocker Management L.L.C. v. Lernout & Hauspie Speech Products N.V.*, No. 00-5965 (JCL), 2005 WL 1366025, at *7 (D.N.J. June 8, 2005) (determining what a "typical" investor relies upon when making investing decisions for a Section 10(b) fraud-on-the-market claim), nor *TSC Industries v. Northway*, 426 U.S. 438 (1976) discuss appraisal arbitrage at all.  Moreover, *In re Appraisal of Dell Inc.*, 143 A.3d 20 (Del. Ch. 2016) and *In re Appraisal of SWS Group, Inc.*, No. 2017-10554-VCG (Del. Ch. May 30, 2017) do not concern Exchange Act claims or the appointment of a lead plaintiff under the PSLRA.

Columbia Pipeline stock at all. Rather than offering proof of these purported strategies to rebut the presumption in favor of The Arbitrage Fund, Movant Ftikas raises baseless speculation and innuendo.

Regardless, even if The Arbitrage Fund had engaged in such strategies, it would not disqualify them from serving as Lead Plaintiff in this Action. All of the cases Movant Ftikas cites on this point concern class claims under Section 10(b) of the Exchange Act, which requires a showing of class-wide reliance based on the fraud-on-the-market presumption of reliance. Thus, these cases note that short sales and day trading "raise the question of whether the seller was actually relying on the market price" when purchasing the subject securities. *See In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102 (N.D. Cal. 2001); *see also Weisz v. Calpine Corp.,* No. 4:02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002); *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014); *Weikel v. Tower Semiconductor Ltd,* 183 F.R.D. 377 (D.N.J. 1998).

It is well-settled that reliance is not a necessary element of a Section 14(a) claim. *See*, *e.g.*, *Mills v. Elec. Auto-Lite*, 396 U.S. 375 (1970) (holding that the broad purposes of Section 14(a) would be frustrated if plaintiffs were required to prove specific reliance); *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 815 (2d Cir. 1975) (holding that requiring additional proof of reliance discourages plaintiffs, whereas the goal of Section 14(a) is to encourage private enforcement); *Cowin v. Bresler*, 741 F.2d 410, 426 (D.C. Cir. 1984) (holding that Section 14(a) claims do not require reliance upon the misleading proxy materials).[6] The

---

[6] Even in the context of Section 10(b) fraud-on-the-market cases, courts have held that investment strategies intended to mitigate risk, such as short selling or day-trading, do not render a movant atypical or inadequate to serve as lead plaintiff. *See*, *e.g.*, *Woburn*, 2015 WL 1311073, at *7 ("Investment strategies intended to mitigate risk do not render a movant atypical or inadequate"); *In re Host Am. Corp. Sec. Litig.,* 236 F.R.D. 102, 108 (D. Conn. 2006) ("[M]any courts have concluded that the fact that a candidate for lead plaintiff engaged in day-trading does not necessarily render that individual or entity atypical or inadequate at representing the class, reasoning 'where the public market of a quoted security is polluted by false information ... all types of investors are injured'" (quoting *In re Oxford Health*

6

Arbitrage Fund is not subject to any unique defenses based upon its trading strategy in Columbia Pipeline stock.

### 2. The Arbitrage Fund's Purchases Above The Merger Price Do Not Subject It To Unique Defenses

Movant Ftikas incorrectly speculates that The Arbitrage Fund was not mislead by the Merger proxy statement given the prices at which it purchased its Columbia Pipeline stock. *See* Ftikas Opp. at 7, 9. But the mere fact that the Fund purchased certain Columbia Pipeline shares at prices above the announced Merger price of $25.50 does not support this unfounded conclusion. Indeed, Movant Ftikas fails to account for publicly available information that incentivized investors to purchase Columbia Pipeline stock at prices above $25.50. Specifically, on March 22, 2016, Columbia Pipeline declared a quarterly dividend of $0.13375 per share of common stock. The dividend was payable on May 20, 2016, to all stockholders of record on April 29, 2016. *See* Entwistle Decl., Ex. B. The Arbitrage Fund's purchases of stock at prices above $25.50 was merely accounting for this additional dividend amount (*i.e.*, $25.50 + $0.13375). *See* Entwistle Decl., Ex. A. Accordingly, and contrary to Movant Ftikas's assertion, at all times the Fund assessed the value of Columbia Pipeline shares at the $25.50 price represented in the Merger proxy (*i.e.*, it was not seeking to enforce appraisal rights to obtain a higher price). The Fund, like other Class Members, was misled by the Merger proxy into believing that $25.50 was fair value for its Columbia Pipeline shares.

Movant Ftikas also incorrectly argues that The Arbitrage Fund is subject to unique defenses because it cannot prove loss causation. *See* Ftikas Opp. at 7-8. Without support, she alleges that

---

*Plans, Inc. Sec. Litig.,* 199 F.R.D. 119, 124 (S.D.N.Y. 2001)); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 415 (S.D.N.Y. 2004) (finding lead plaintiff movant that engaged in day trading was not subject to unique defenses); *Aviva Partners, LLC v. Navarre Corp.,* No. CIV. 05-1151, 2005 WL 3782255, at *3 (D. Minn. Dec. 13, 2005) ("Indeed, short sales do not necessarily render claims atypical").

any losses suffered by the Fund may be attributed to a failure in its purported trading strategy, rather than the misrepresentations in the Merger proxy (*i.e.*, because the Fund was engaging in appraisal arbitrage it always believed that Columbia Pipeline shares were worth more than the $25.50 Merger price and sought to obtain a higher price through appraisal proceedings). But, as noted above, the Fund never engaged in an appraisal arbitrage strategy in connection with its Columbia Pipeline investments. *See supra* I.B.1. Rather, as alleged in its Complaint, the Fund viewed the Merger price to be fair value based on the misrepresentations in the Merger proxy. *See* Entwistle Decl., Ex. C. As with other Class Members, the Fund suffered losses when it voted to approve the Merger at a price that was below fair value.

### 3. The Arbitrage Fund's Purchases After The Merger Announcement Do Not Subject It To Unique Defenses

Movant Ftikas also erroneously argues that The Arbitrage Fund is subject to unique defenses because it purchased shares after the Merger was announced on March 17, 2016.[7] *See* Ftikas Reply at 9. The Complaint filed by Movant Ftikas states that this Action was brought on behalf of Columbia Pipeline shareholders of record as of May 18, 2016. *See* ECF No. 1.[8] The Complaint does not differentiate between those who bought before or after the announcement of

---

[7] The authorities Movant Ftikas cites on this point are inapt. The cases *Porzio v. Overseas Shipholding Group,* No. 12 Civ 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330 (S.D.N.Y. 2005); and *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) did not involve Section 14(a) claims and concerned potential lead plaintiffs who sold all of their shares before a corrective disclosure. *In re SLM Corp. Sec. Litig.*, 258 F.R.D. at 112, was a case where a potential lead plaintiff lacked standing because it was an investment advisor.

[8] Movant Ftikas's two certifications filed in this case create some ambiguity regarding her Columbia Pipeline shares. Ms. Ftikas's PSLRA certification filed with her complaint lists a "transaction" in Columbia Pipeline stock on July 1, 2016 for 1,292 shares at a price of $25.50 per share. *See* ECF No. 1-1. Her recently filed declaration and lead plaintiff motion now indicates that she owned 1,292 Columbia Pipeline shares as of July 1, 2015 through July 1, 2016. *See* ECF Nos. 15 and 17. The Arbitrage Fund assumes for purposes of these motions that Movant Ftikas held shares as of the Merger record date, but reserves its right to take discovery on this issue should additional facts emerge that create further ambiguity on this point.

8

the Merger. All are cognizable Class Members so long as they held shares on the Merger record date and were eligible to vote on the Merger.

This is consistent with the requirements of Section 14(a). In a Section 14(a) case, it only matters whether a plaintiff held shares as of the record date for the merger, and was entitled to vote those shares. *See*, *e.g.*, *DCML LLC v. Danka Bus. Sys. PLC, A.D.,* No. 08 Civ. 5829, 2008 WL 5069528, at *2 (S.D.N.Y.2008) ("It is generally accepted that only shareholders who were entitled to vote on a transaction have standing under section 14(a) to challenge the proxy materials issued by a corporation regarding that transaction."); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,* 381 F. Supp. 2d 192, 241 (S.D.N.Y.2004) ("[O]nly shareholders who owned Time Warner common stock on the record date of the Merger are permitted to bring Section 14(a) claims . . . "); *Werfel v. Kramarsky*, 61 F.R.D. 674, 678 (S.D.N.Y. 1974) (plaintiff has no private right of action to bring Section 14(a) claim because he "never had any voting rights").

The Arbitrage Fund held 1,166,559 Columbia Pipeline shares as of the record date and was entitled to vote those shares on the Merger. Moreover, as noted above, The Fund did not engage in appraisal arbitrage or somehow know that the Merger price of $25.50 did not reflect fair value when it bought after the Merger was announced. Accordingly, the Fund is not subject to unique defenses merely because it purchased Columbia Pipeline stock after the Merger announcement.

In sum, Movant Ftikas has failed to offer any "***proof***" that The Arbitrage Fund will not adequately represent the Class or is subject to "unique defenses." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Therefore, the presumption that The Arbitrage Fund is the "most adequate plaintiff" pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) has not been rebutted and The Arbitrage Fund should be appointed Lead Plaintiff.

II. **THE ARBITRAGE FUND'S CHOICE OF LEAD COUNSEL SHOULD BE APPROVED**

The Court should approve The Arbitrage Fund's selection of Entwistle & Cappucci LLP as Lead Counsel for the Class. A court should not generally disturb Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, The Arbitrage Fund has chosen Lead Counsel with extensive experience and a demonstrated history of success in numerous securities class actions on behalf of defrauded investors, and its selection of counsel should be approved.

## CONCLUSION

For the reasons discussed above, The Arbitrage Fund respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve its selection of Entwistle & Cappucci as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: July 20, 2018  
New York, N.Y.

Respectfully submitted,

By: */s/ Andrew J. Entwistle*  
Andrew J. Entwistle  
Vincent R. Cappucci  
Jonathan H. Beemer  
**ENTWISTLE & CAPPUCCI LLP**  
299 Park Avenue, 20th Floor  
New York, New York 10171  
Telephone: (212) 894-7200  
Facsimile: (212) 894-7272  
Emails: aentwistle@entwistle-law.com  
vcappucci@entwistle-law.com  
jbeember@entwistle-law.com  

*Counsel for Proposed Lead Plaintiff The Arbitrage Fund and Proposed Lead Counsel for the Class*

        David R. Scott
        William C. Fredericks
        **SCOTT & SCOTT ATTORNEYS AT LAW LLP**
        The Helmsley Building
        230 Park Ave
        17th Floor
        New York, New York 10169
        Telephone: (212) 223-6444
        Facsimile: (212) 223-6334
        Emails: david.scott@scott-scott.com
                 wfredericks@scott-scott.com

        *Additional Counsel for Proposed Lead Plaintiff*